IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **BARRY HOBSON** )<br>9623 Reiker Drive )<br>Upper Marlboro, MD 20774 )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br> )<br>**Local 689, Amalgamated Transit Union** )<br>**AFL-CIO,** )<br>2701 Whitney Place )<br>Forestville, MD 20747 )<br> )<br>Defendant. )<br> ) | Case No. TDC-21-2374<br><br>AMENDED COMPLAINT<br>& JURY DEMAND |

## AMENDED COMPLAINT

Plaintiff, BARRY HOBSON, pro se, files this Complaint against Defendant, Local 689, Amalgamated Transit Union, AFL-CIO, (an unincorporated association) pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.,* the Maryland Wage and Hour Law (MWHL), MD. CODE ANN., §§ 3-401 *et seq.,* and the Maryland Wage Payment and Collections Law (MWPCL), MD. CODE ANN.,§§ 3-501 *et seq.,* and the Maryland doctrine of unjust enrichment. The following allegations are based on personal knowledge as to plaintiff's own conduct and are made on information and belief as to the acts of others.

### I.  Introduction

Plaintiff Hobson brings this suit in order to recover damages resulting from Defendant's failure to properly compensate him for regular and overtime wages earned under the FLSA, the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collections Law, referenced above.

## II. PARTIES, JURISDICTION, AND VENUE

I. Plaintiff Hobson is a resident of Upper Marlboro, Maryland, and previously worked for Defendant in Prince George's County at Defendant's Headquarters in Forestville, Maryland.

2. Defendant is, and at all times relevant to this action has been, an unincorporated association residing within Prince George's County, within the jurisdiction of this district.

3. This Court has subject matter jurisdiction over questions involving the interpretation of the FLSA pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff Hobson's MWHL and MWPCL claims pursuant 28 U.S.C. § 1367 and § 1332 because those state law claims arise from the same set of operative facts as the FLSA claim over which this Court has original jurisdiction.

4. Venue is proper in this Court under 28 U.S.C. § 1391 because the events and omissions supporting this Complaint all occurred within this District and Defendant is subject to personal jurisdiction in this District

## III. FACTS

5. Defendant Local 689, Amalgamated Transit Union, AFL-CIO, engages in business commonly known as 'Labor Union' and has annual gross volumes of business in excess of $500,000.00

6. From approximately November 2017 to August 2021, Plaintiff was employed by defendant at its 2701 Whitney Place Forestville, MD 20747 location.

7. Throughout Plaintiff's employment with Defendant, Plaintiff was paid on salaried bases and was misclassified as an FLSA-Exempt employee for the purposes of not paying overtime in accordance with mandates of the FLSA and/or MWHL[1].

8. When Plaintiff's employment ended, he was being paid $90,000 annually (approximately $43.2692 per hour).

9. Throughout his employment with Defendant, Plaintiff regularly worked in excess of 40 hours in a workweek.

10. However, Defendant failed to pay Plaintiff for all of his time spent performing his work activities.

11. Defendant failed to pay plaintiff for all work activities through various methods including, for example, mandating Plaintiff to answer phone calls and send emails after work hours, on holidays, and on the weekend.

12. January 3, 2019, Defendant announced the instant promotion of Plaintiff to Chief of Staff & Executive Assistant to The Office of The President.

14. Plaintiff assumed the role of Chief of Staff immediately and the office's OPEIU Local 2 staff will immediately report to Plaintiff. Defendant at this time promised verbally to address Plaintiff's newly increased salary, job duties, and authority in the coming week for the new dual position/role.

15. Although Plaintiff had not previously served as Chief of Staff, Defendant never noted pre-requisites for Plaintiff to hold the office of Chief of Staff and receive compensation in conjunction with the instant promotion. It was understood that Plaintiff was accepting an entirely new position in addition to his former role as Executive Assistant.

---

[1] Plaintiff's original employment contract notes no FLSA classification.

3

16. Defendants acknowledged Plaintiff's promotion by way of Plaintiff's new business cards inclusive of two roles or job titles, title change on the organization's website to include dual roles, internal telephone distribution lists, email signatures, and additional various internal methods of recognition. All indicated Plaintiff in a dual capacity.

17. Immediately after Plaintiff's promotion announcement, plaintiff was assigned additional duties outside of his noted administrative duties as hired and regularly performed in line with his Chief of Staff role.

18. On January 8, 2019, Plaintiff records details of a meeting with defendant to discuss new role, salary, and authority.

19. At this time, Plaintiff and Defendant makes verbal agreement to address and solidify Plaintiff's new salary and duties as soon as Defendant meets with Financial Secretary later in the week. Plaintiff notes that Defendant understood and agreed that the Plaintiff expected a salary adjustment from the time of the initial discussion of promotion.

20. January 23, 2019, Plaintiff recorded details of a meeting where he addressed Defendant about salary adjustment for new role after being tasked with finding a new vendor for the organization's Information Technology oversight.

21. With knowledge of the extra hours worked in a workweek as well as an oral agreement to compensate (Soon), Defendant continued to direct Plaintiff's work activities for which he was never compensated as promised and required by law.

22. On March 11, 2019, Plaintiff recorded details of a meeting with Defendant asking for his salary to be adjusted in accordance with his agreed promotion and the duties he was being directed under his new role. In like manner, Plaintiff addressed defendant about overtime pay following the organization's lengthy March 5, 2019 charter meeting.

Plaintiff complained of consistently working over 40 hours a week and not being compensates.

23. Defendant advised Plaintiff that he was salaried for that very reason, "we don't pay overtime". Plaintiff's request for overtime was denied.

24. Plaintiff recorded details of a meeting with Defendant on March 18, 2019 with Defendant where a discussion ensued around his new salary and his new added role.

25. Plaintiff and defendant agreed verbally that his salary would be adjusted in a few weeks. Specifically, Defendant asked how much was the Plaintiff looking for in salary, Plaintiff explained that he and Financial Secretary, Keith Bullock, had discussed a salary around $108,000 and $110,000 annually.

26. Plaintiff never heard from Defendants again regarding pay issue.

27. October 2019, Plaintiff addressed Defendant again about salary adjustment and compensation for work provided in which he had not been compensated as agreed. Defendant again asked Plaintiff to wait as the organization was engaged in Strike activity (Cinder Bed Road) and could not address the salary at that time. Defendant again agreed to pay Plaintiff all wages owed.

28. March 11, 2020, after no response from Defendants since October 2019, Plaintiff sent an email to Defendants attempting to step down from his promoted role due to a breach in agreement from Defendants to compensate him over 1 year old/ago. Plaintiff recorded details of a subsequent meeting the same afternoon where Defendant begged Plaintiff not to step down and promising again to address and discuss salary right away.

29. Plaintiff remained in his role as Chief of Staff and Executive Assistant to the Office of The President.

30. As of May 1, 2020, Defendants continued to refuse compensation for services rendered.

31. May 4, 2020, Plaintiff called a meeting with the 'Top 5' officers of the union to address his non-compensation as promised and required by law.

32. Officers in attendance were: Raymond Jackson, President, Carroll Thomas, 1st Vice President, Derrick Mallard, 2nd Vice President, Keith Bullock, Financial Secretary, Brenda Thomas, Recording Secretary.

33. In this meeting, Plaintiff put Defendant on notice that the organization was in violation of the law.

34. President Raymond Jackson indicated in this meeting that he gave a directive to Financial Secretary, Keith Bullock, to handle the pay issue and assumed Plaintiff had been paid everything he was owed months ago.

35. A heated discussion ensued between Jackson and Bullock, as Bullock denied any such directive from Jackson.

36. 1st Vice President and 2nd Vice President Carroll Thomas and Derrick Mallard, insisted that the organization "owed what was promised, Barry has been doing the work, we own him. There is no question whether we own him or not".

37. July 15, 2020, Plaintiff engages Defendant via text after a follow-up inquiry to Financial Secretary, Keith Bullock, after the May 4, 2020 meeting.

38. Defendant replied via text "Barry, it will have to wait until I get in tomorrow".

39. July 23, 2020 Plaintiff and Defendant agrees on salary for Promotion of $90,000.

40. Plaintiff inquired to Defendant's verbal agreement for compensation from January 2019. Defendant refused to acknowledge the then agreement despite acknowledging that compensation matter was directed to be addressed months prior.

41. September 3, 2021 Plaintiff agrees to relinquish his promotional title without explanation but still be granted the pay adjustment as promised in 2019.

42. The salary increase was based solely on Plaintiff's promotion and verbal agreement between Plaintiff and Defendant on January 8, 2019.

43. Plaintiff and Defendant signed "Personnel Action Change" on September 3, 2020 (Plaintiff) and September 8, 2020 (Defendant) to solidify increase to $90,000.

44. Personnel Action Change indicates an agreed role change effective January 3, 2019 for the promotion discussed herein.

45. The Personnel Action Change also indicates the agreed salary change to $90,000 agreed upon by both parties on July 23, 2020.

46. The Personnel Action Change is signed by both, Plaintiff and Defendant.

47. Despite the absence of direct written verbiage indicating "Retro or Back" pay, the Personnel Action clearly indicates an existing agreement between the parties in January 2019 as well as Parol evidence that aligns itself with the mutually signed personnel action.

48. As result of these common business practices, Defendant has failed to compensate Plaintiff for all hours worked and when mandated, the legally mandated overtime premium for hours worked in excess of 40 in a workweek.

## IV.   Causes of Action

### Count One – Violation of the FLSA

49.   All previous paragraphs are incorporated as though fully set forth herein.

50.   Plaintiff is an employee entitled to the FLSA's protections.

50. Plaintiff is an employee entitled to the FLSA's protections.

51. Plaintiff was not at all times entrusted with a primary duty which required the exercise of discretion and independent judgement with respect to matters of significance as required for overtime exception. See, 29 C.F.R. § 541.200(a). Thus, qualifying him for FLSA protections. Local 689's operational structure does not support hired staff to make or use independent judgement in matters of significance. Power and authority rests with the elected union officers.

52. The FSLA entitle employees to compensation for every hour worked in a workweek. See 26 U.S.C. § 207(a)(1)

53. The FSLA entitles employees to overtime compensation "not less than one and one-half times" their regular rate of pay for all hours worked over 40 in a workweek in accordance with FLSA, 29 U.S.C. § 207 (a)(1).

54. Defendant violated the FLSA by failing to pay Plaintiff the/any legally mandated overtime premium compensation for work performed in excess of 40 hours weekly for the duration of his employment.

55. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**WHEREFORE,** Plaintiff Hobson respectfully requests that this Honorable Court enter an order of judgment, in his favor and against Defendant, granting to Plaintiff Hobson an amount, to be determined at trial, equal to the unpaid wages in exchange for time worked in excess of 40 hours weekly as required under the FLSA; an additional amount equal to the unpaid wages required under the FLSA as liquidated damages; reasonable court fees and costs associated with bringing this action; and any additional relief this Honorable Court sees fit to award.

### Count II – Violation of MWHL

56. All previous paragraphs are incorporated as though fully set forth herein.

57. Defendants were aware of Plaintiff's hours worked and duties, or should have been aware of this, and directed him to work in excess of forty (40) hours per week each week.

58. Plaintiff Hobson was never paid his new regular rate of pay of (by agreement effective January 3, 2019) nor any premium overtime pay for hours worked in excess of 40 per week at any rate when applicable.

59. Dependent's failure to pay Plaintiff at his new regular compensation rate (by agreement effective January 3, 2019) nor any premium overtime compensation willful and intentional violation of the MWHL, Maryland Labor & Employment, MD. CODE ANN., §§3-401 et seq.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an order of judgment, in his favor and against Defendant, granting to Plaintiff Hobson an amount, to be determined at trial, equal to the wages required under the MWHL; an additional amount equal to the wage required under the MWHL as liquidated damages; reasonable attorney's fees and costs associated with bringing this action; and any additional relief this Honorable Court sees fit to award.

### Count III – Violation of the MWPCL

60. All previous paragraphs are incorporated as though fully set forth herein.

61 Defendant has been the employer for purposes of the MD. Code ANN. Labor and Employment Art. § 3-501 *et seq.*

62. Pursuant to the MWPCL, Defendant was required to pay Plaintiff Hobson all

9

amounts owed to him for work performed on a regular basis.

63. Defendant has failed and refused to pay Plaintiff Hobson at the compensation rate agreed upon via written agreement on September 3rd and 8th, 2021(Effective 01.03.2019), nor any premium overtime hours he worked in excess of 40 hours each workweek since November 2017.

64. Defendant made unlawful deductions from the wages of Plaintiff by failing to pay all wages owed in violation of MD. Code ANN. Labor and Employment § 3-503.

65. Defendant has the duty to pay whatever wages are due to Plaintiff on a regular basis. Defendant failed to uphold this duty in violation of MD. CODE ANN. Labor and Employment Art. § 3-502 and § 3-505. This failure to properly compensate its employees includes wages owed at both regular rates of pay[2] and premium overtime rates owed at time and one-half the regular rate under both the FLSA and the MWHL are in contravention of MWPCL. See MD. CODE ANN. Labor and Employment Art. § 3-502 and § 3-505

66. Defendant' failure to comply with obligations under the Maryland Labor and Employment Code was willful, intentional, not in good faith, and not because of a *bona fide* dispute.

**WHEREFORE,** Defendant's conduct constitutes violations of the MWPCL, MD. CODE ANN. Labor and Employment Art. §§ 3-501, *et seq.*, subjecting it to the MWPCL's treble damages provisions under § 3-507.1. Plaintiff respectfully requests that this Honorable Court enter an order of judgment, in his favor and against Defendant, granting to Plaintiff an amount, to be determined at trial, equal to the wages required under the

---

[2] In this instance, the regular rate of pay is established in Personnel Action Change dated September 2020. This Personnel Action Change gives authority for the "regular rate of pay" referenced herein as well as the effective date the rate should have taken course following the promotion as agreed by Plaintiff and Defendants.

10

MWPCL.

### Count IV – Unjust Enrichment

67. All previous paragraphs are incorporated as though fully set forth herein.

68. Throughout the relevant period, Plaintiff was routinely directed to perform day-to-day work activities in which he as not compensated for at either his correct regular rate, or an overtime premium rate for hours worked over 40 in a workweek.

69. As a result, Plaintiff was routinely denied wages owed.

70. Defendant received a direct and substantial benefit from the work performed by plaintiff on behalf of Defendant under circumstances that do not support Defendant's full entitlement to those funds (herein disputed).

71. Permitting defendants to retain the direct and substantial benefit they received from Plaintiff under these circumstances would be inequitable because: defendant was not entitled to the funds at issue; Defendants practices caused Plaintiff to suffer more than a *de minimis* injury; and defendant was able to retain funds at issue only because of their control over Plaintiff's wages.

### JURY TRIAL DEMANDED

Plaintiff demands a jury trial as to all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A. Liquidated damages and penalties to the fullest extent permitted under the law;

B. Litigation costs, expenses and future attorney's fees to the fullest extent permitted under the law; and

C. Such other relief as this court deems just and proper.

Dated: September 11, 2021

Respectfully submitted,

Barry Hobson, Plaintiff
*Pro Se*
9623 Reiker Drive
Upper Marlboro, MD 20774
Telephone: (202) 368-7269
Bchobson82@gmail.com

## CERFICIATE OF SERVICE

I swear, upon penalty of perjury, that on this __11th__ day of November, 2021, a copy of the Plaintiff's Amended Complaint has been electronically transmitted to the Defendant, ATU Local 689, Amalgamated Transit Union, AFL-CIO. I further certify that a copy of the same has been sent to the ~~Plaintiff~~ Defendant via U.S. Mail, at 2701 Whitney Place Forestville, MD 20747

Barry Hobson, Plaintiff
*Pro Se*
9623 Reiker Drive
Upper Marlboro, MD 20774
Telephone: (202) 368-7269
Bchobson82@gmail.com

Copies to:

**Paul M. Tyler,** #15776
General Counsel ATU Local 689
2701 Whitney Place
Forestville, MD 20747
(240)770-1485
(202) 257-4720 (cell)
(301) 568-0692 (fax)
ptyler@atu689.org

*Counsel for Defendant*

USPS TRACKING #   **9114 9999 4431 4262 7229 81**
& CUSTOMER   For Tracking or inquiries go to USPS.com
RECEIPT   or call 1-800-222-1811.

13